# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
Deborah S. Hunt                    POTTER STEWART U.S. COURTHOUSE                    Tel. (513) 564-7000
Clerk                                      CINCINNATI, OHIO 45202-3988                          www.ca6.uscourts.gov

Filed:  February 08, 2022

Mr. David Joseph Carey
American Civil Liberties Union of Ohio Foundation
1108 City Park Avenue, Suite 203
Columbus, OH 43206

Ms. Sara Elizabeth Coulter
Case Western Reserve University School of Law
Milton A. Kramer Law Clinic Center
11075 E. Boulevard
Cleveland, OH 44106

Ms. Lynnette Dinkler
5335 Far Hills Avenue, Suite 123
Dayton, OH 45429

Ms. Freda Levenson
ACLU of Ohio Foundation
4506 Chester Avenue
Cleveland, OH 44103

Mr. John Stephen Teetor
Mr. Andrew N. Yosowitz
Teetor Westfall
200 E. Campus View Boulevard, Suite 200
Columbus, OH 43235

          Re:  Case No. 20-3599, *Michael Wood v. Chad Eubanks, et al*
               Originating Case No. : 3:18-cv-00168

Dear Counsel,

    The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Deborah S. Hunt, Clerk

Cathryn Lovely
Deputy Clerk

cc: Mr. Richard W. Nagel

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0025p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

────────────────

MICHAEL ANDREW WOOD,

*Plaintiff-Appellant,*

*v.*

No. 20-3599

CHAD EUBANKS, in his individual and official capacity
as Sergeant of the Clark County Sheriff's Department;
MARIO TROUTMAN, JR., CHERISH STEIGER, MATTHEW
YATES, JACOB SHAW, and JOSEPH JOHNSON, in their
individual and official capacities as Deputies of the
Clark County Sheriff's Office,

*Defendants-Appellees.*

────────────────

Appeal from the United States District Court for the Southern District of Ohio at Dayton.
No. 3:18-cv-00168—Thomas M. Rose, District Judge.

Argued:  November 2, 2021

Decided and Filed:  February 8, 2022

Before:  GUY, GIBBONS, and GRIFFIN, Circuit Judges.

────────────────

### COUNSEL

**ARGUED:**  Sara Elizabeth Coulter, CASE WESTERN RESERVE UNIVERSITY, Cleveland,
Ohio, for Appellant.  Andrew N. Yosowitz, TEETOR WESTFALL, LLC, Columbus, Ohio, for
Appellees.   David J. Carey, AMERICAN CIVIL LIBERTIES UNION OF OHIO
FOUNDATION, Columbus, Ohio, for Amicus Curiae.  **ON BRIEF:**  Lynnette Dinkler,
DINKLER LAW OFFICE, LLC, Dayton, Ohio, for Appellant.  Andrew N. Yosowitz, TEETOR
WESTFALL, LLC, Columbus, Ohio, for Appellees.   David J. Carey, AMERICAN CIVIL
LIBERTIES UNION OF OHIO FOUNDATION, Columbus, Ohio, Elizabeth Bonham, Freda J.
Levenson, AMERICAN CIVIL LIBERTIES UNION OF OHIO FOUNDATION, Cleveland,
Ohio, for Amicus Curiae.

_____

## OPINION

_____

JULIA SMITH GIBBONS, Circuit Judge.  Michael Wood wore a shirt bearing the words "Fuck the Police" to the county fair.  According to Wood, the defendant police officers ordered him to leave and escorted him from the fairgrounds because of his shirt.  While leaving, Wood made his displeasure known through numerous coarse insults levied at the police and the fairground's administrator.  The defendants then arrested Wood for disorderly conduct.  After the charges were dismissed, Wood filed this § 1983 action against the officers, alleging false arrest and retaliation.  The district court granted summary judgment to the defendants.  We reverse because Wood's speech was protected by the First Amendment.

I.

On July 29, 2016, Michael Wood went to the Clark County Fair wearing a shirt that said "Fuck the Police."  Wood explained that he "wore the shirt because [he] ha[s] the constitutional right to do so."  DE 55-2, Wood Dep., Page ID 465.  While Wood had "no ill will or ill intent against law enforcement in general," he took issue with how some of the county's officers had treated him in the past.  *Id.*  Specifically, he said that Sergeant Chad Eubanks had previously stopped him for a traffic infraction and said "something along the lines of, 'I'll mess you up.'"  *Id.*  He also stated that he believed the Clark County Sheriff's Office was "a cesspool" because so many officers who "were not honorable servants" had been fired and "more exist[ed]" in the department.  *Id.* at 466.  Wood also filed a Freedom of Information Act request regarding "a big fiasco about an affair, interoffice affair" in the department.  *Id.* at 470.

Wood said that he received a few comments about his shirt at the fair, including a woman who made a profane gesture at him.  Wood also claimed that a sheriff's deputy yelled to him as he passed, "Hey, Wood, I like your shirt."  *Id.* at 466.  Wood "gave him a thumbs up" and said, "Yeah, I thought you might."  *Id.*

A few hours after Wood arrived at the fair, the sheriff's department received a call complaining about Wood's shirt.  Deputies Jacob Shaw, Mario Troutman, and Matthew Yates

approached Wood and asked him to identify himself, but Wood declined to do so. Yates
allegedly responded that the officers "know who you are." *Id*. at 468. Wood attempted to record
the interaction but stopped when "Troutman started laughing and pointing and said, 'Huh, your
light went out. You're not recording anymore.'" *Id*. At that point, Wood walked away.

Several hours later, the officers were called to one of the buildings on the fairgrounds.
Shaw, Troutman, and Yates were joined by Eubanks and deputies Joseph Johnson and Cherish
Steiger. Dean Blair, the Executive Director of the Clark County Fairgrounds, allegedly
approached Wood first, saying, "Where's this shirt? I want to see this shirt." *Id*.

Troutman, Yates, and Johnson wore body cameras and filmed the subsequent events. As
Yates walked closer to Wood and Blair, two other officers entered the building from the opposite
side. Wood was no longer wearing the profane shirt, and Blair asked Wood whether he had
changed. Wood did not answer but asked Blair and the officers if he had committed a crime or
was being detained. Blair replied that he wanted Wood to leave, that Wood was "not welcome,"
and that Wood needed to get off the fairgrounds. Yates Cam #1, 00:40–45; Johnson Cam,
00:13–00:25. Wood agreed to leave if the three-dollar entrance fee was refunded. Blair gave
Wood five dollars and told him to "keep the change" and never come back. Yates Cam #1,
00:55–45. Wood replied, "I have change for you, sir," but Blair refused to accept the money,
telling Wood that he "wouldn't take [Wood's] money" and didn't "want [Wood] around." *Id*. at
00:58–1:14.

Wood asked Blair whether he "realized what [Wood was] doing [wa]s a constitutionally
protected activity." *Id*. at 1:13–1:21. Blair replied, "Not in my home." *Id*. Wood responded,
"Not in your home? This isn't your home. This is public property." *Id*. Eventually, Blair asked
the officers, "What [do] I have to say to him?" and reiterated to Wood, "Get off my grounds."
*Id*. at 1:24–30. Wood responded, "Very well. I'll be talking to my attorney about this." *Id*. at
1:27–31.

Troutman then allegedly pushed Wood's shoulder, and Wood said, "You ain't pushing
me nowhere. I'll leave." DE 55-2, Wood Dep., Page ID 469; Yates Cam #1, 1:35–42; Johnson
Cam, 1:17–22. Wood turned and began walking toward the open door, flanked by Blair and

several officers.  While walking, Wood turned to face the officers and repeatedly asked whether they had taken an oath to uphold the Constitution.  Blair continued to repeat that Wood was "not welcome in [his] house."  Yates Cam #1, 2:00–2:05.  At this point, Wood told the officers not to put their hands on him and that Troutman had committed battery.

As the officers escorted Wood outside, one of them told Wood that he had "been given an order to vacate the property.  So you're leaving."  Troutman Cam #1, 00:32–35.  Wood asked whether that was "a lawful order."  Yates Cam #1, 2:10–18; Troutman Cam #1, 00:30–35.  Blair and Wood exited the building and continued arguing, with Wood repeatedly stating that the fairgrounds were public property and Blair insisting that Wood leave.  When Blair told Wood that he needed to leave because he had gotten his money back, Wood replied, "Five dollars ain't shit to me, bro . . . Who the fuck do you think you are?"  Yates Cam #1, 2:40–56; Troutman Cam #1, 1:10–1:15.  One of the officers spoke into his radio that they were "escorting . . . [Wood] to the front gate."  Johnson Cam 2:29–35.

While walking, Wood pointed behind him and said, "Look at these thugs with badges behind me.  How many is there?"  Yates Cam #1, 2:57–3:00.  Spinning around, Wood counted "1, 2, 3, 4, 5, 6 motherfuckers.  Six bitch ass fucking pigs."  *Id*. at 3:00.  Wood appeared to stop, prompting one officer to tell him to "keep walking."  *Id*. at 3:01–05.  Wood complied but continued speaking.  "Fucking thugs with guns that don't uphold the United States Constitution. Fuck all you.  You dirty rat bastards."  *Id*. at 3:05–14; Troutman Cam #1, 3:00–31.  Wood then turned to Steiger and said, "And you, you're a fucking thief, I've heard about you."  Yates Cam #1, 3:13–17; Johnson Cam, 2:53–56.

Wood stopped at a tent to pick up his belongings, and an officer said, "this way, sir, sir." Yates Cam #1, 3:26–30; Troutman Cam #1, 1:44–48.  Wood replied, "Fucking thugs with badges . . . thugs with badges."  Yates Cam #1, 3:32–38; Troutman Cam #1, 1:50–2:00.  As the officers directed him forward, Wood exclaimed that "the United States Constitution doesn't apply at the Clark County fairgrounds, people."  Yates Cam #1, 3:40–46; Troutman Cam #1, 2:00–05.

Wood and the officers disagreed about where Wood should exit.  Wood stated that he was "going out the back gate" because he had come in that way.  Yates Cam #1, 3:49–59;

Troutman Cam #1, 2:07–13.  The officers insisted on the front gate, and one officer told Wood that they were "not going to walk all the way to the back gate."  Yates Cam #1, 3:55–57.  Wood replied, "Then that's your fucking fat-ass problems, motherfucker, I'm leaving."  *Id.* at 3:57–4:02; Johnson Cam, 3:35–40.  Wood turned and walked toward the back gate, with Blair and all six deputies following.

The officers began discussing whether they could arrest Wood for disorderly conduct and disturbing the peace.  One officer asked another "how long [they] [were] going to allow" Wood to keep talking.  Johnson Cam, 4:00–03.  That officer replied that "we could do disorderly conduct."  *Id.* at 4:02–06.  Blair, catching up with Wood, turned and said to the officers that Wood was "disturbing my peace" and shouted, "Charge him!"  Yates Cam #1, 4:20–22; Troutman Cam #1, 2:37–43.  One officer asked the others what they should do, commenting that Wood was "talking the whole way out the door, he's still talking."  Yates Cam #1, 4:40–50; Troutman Cam #1, 3:00–05.  Another officer said, "Well, make an arrest," to which another asked, "Make an arrest?"  Yates Cam #1, 4:49–52.

Blair and Wood walked in front of the officers, continuing to argue.  Troutman Cam #1, 3:15–30.  Although difficult to discern from the audio, Wood asked Blair, "Have you ever fucking served this country?," to which Blair replied, "Yes, asshole."  *Id.* at 3:13–24.  Wood retorted, "Bullshit.  In what?  The Air Force?  Fucking flyboy."  *Id.*  Wood then turned around and said to Troutman, "Look at this bullshit.  You're one big man ain't you, motherfucker.  You got eight pussies with badges behind you."  *Id.* at 3:40–47.  Blair commented, "You got a lot of mouth."  *Id.* at 3:49–50.  Wood replied that Troutman "wants to fucking batter [him]," and Wood planned to press charges.  *Id.* at 3:50–53.  Blair turned to Troutman and said, "I'm your witness.  That's bullshit."  *Id.* at 3:53–58.  Wood continued to insist that Troutman had "touched [him]" and asked whether they knew "what the legal definition of battery is."  *Id.* at 3:57–4:00.  Blair repeated, "You got a lot of mouth, boy."  *Id.* at 4:00–03.  Wood retorted, shouting "Do you know what the legal definition of battery is, motherfucker?  Then try to find out."  *Id.* at 4:03–08.

At that point, the officers arrested Wood for disorderly conduct.  On the way to the jail, an officer said to Wood, "How's that work?  You got a shirt that said, 'f the police,' but you want us to uphold the Constitution?"  Troutman Cam #2, 17:15–21.  He was charged with

disorderly conduct, Ohio Rev. Code Ann. § 2917.11(A)(2), and obstructing official business, § 2921.31. The prosecutor later dismissed both charges, apparently because the "State [was] unable to locate necessary lay witnesses to [the] incident in time for trial" to show that Wood's "words and conduct amounted to 'fighting words'" under the First Amendment. DE 6-6, Pretrial Rev. Form, Page ID 84; DE 35, Prosecutor Email, Page ID 262.

Wood filed this 42 U.S.C. § 1983 action against all six officers involved in his arrest (Eubanks, Shaw, Troutman, Yates, Johnson, and Steiger), alleging numerous constitutional violations. The defendants moved for summary judgment, and the magistrate judge recommended granting the motion as to all but two of Wood's claims—unlawful arrest and First Amendment retaliation. *Wood v. Eubanks*, R. & R., No. 3:18-CV-168, 2020 WL 635652, at *16 (S.D. Ohio Feb. 11, 2020). The district court disagreed in part, concluding that the officers were protected by qualified immunity on the false arrest claim and that there was insufficient evidence of retaliation, so the court granted summary judgment to the defendants on all claims. *Wood v. Eubanks*, 459 F. Supp. 3d 965, 980 (S.D. Ohio 2020). Wood timely appealed the dismissal of his false arrest and retaliation claims.

## II.

We review a grant of summary judgment de novo. *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 731 (6th Cir. 2006). Summary judgment is proper if "there is no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.

Wood's first claim is for false arrest. "To prevail on a false arrest claim under § 1983, 'a plaintiff must prove that the arresting officer lacked probable cause to arrest the plaintiff.'" *Tlapanco v. Elges*, 969 F.3d 638, 652 (6th Cir. 2020) (brackets and internal quotation marks omitted). Therefore, "[a] showing of 'probable cause provides a complete defense to a claim of false arrest.'" *Id.* (internal quotation marks omitted). An officer is entitled to qualified immunity if he reasonably believed that the arrest was lawful, even if that belief was erroneous. *Barton v.*

No. 20-3599                    *Wood v. Eubanks, et al.*                    Page 7

*Martin*, 949 F.3d 938, 950 (6th Cir. 2020).  "[S]tate law defines the offense for which an officer may arrest a person, while federal law dictates whether probable cause existed for an arrest." *Kennedy v. City of Villa Hills*, 635 F.3d 210, 215 (6th Cir. 2011).  Because there was no probable cause to arrest Wood for his conduct, and because Wood's right to be free from arrest was clearly established, the officers are not entitled to qualified immunity.

### A.

Wood was arrested for disorderly conduct, Ohio Rev. Code Ann. § 2917.11(A)(2), and obstructing official business, § 2921.31.  The only issue is whether the officers had probable cause to arrest Wood for disorderly conduct.[1]  Ohio's statute "requires two elements to commit disorderly conduct."  *Osberry v. Slusher*, 750 F. App'x 385, 394 (6th Cir. 2018) (internal citations omitted).  "First, a person must 'recklessly cause inconvenience, annoyance, or alarm to another,'" and "[s]econd, the person must cause this disturbance by engaging in specific enumerated conduct."  *Id.*  Here, the alleged specific enumerated conduct is "[m]aking unreasonable noise or an offensively coarse utterance, gesture, or display or communicating unwarranted and grossly abusive language to any person."  Ohio Rev. Code Ann. § 2917.11(A)(2).

Ohio's statute "requires two elements to commit disorderly conduct."  *Osberry v. Slusher*, 750 F. App'x 385, 394 (6th Cir. 2018) (internal citations omitted).  "First, a person must 'recklessly cause inconvenience, annoyance, or alarm to another,'" and "[s]econd, the person must cause this disturbance by engaging in specific enumerated conduct."  *Id.*  Here, the alleged specific enumerated conduct is "[m]aking unreasonable noise or an offensively coarse utterance, gesture, or display or communicating unwarranted and grossly abusive language to any person."  Ohio Rev. Code Ann. § 2917.11(A)(2).

The Ohio Supreme Court has clearly established that a person may not be punished for disorderly conduct "unless the words spoken are likely, by their very utterance, to inflict injury

---

[1]Defendants did not raise the obstruction charge as a basis for summary judgment.  And, although they argued probable cause existed to arrest Wood for disorderly conduct and littering, § 3767.32(A), because Wood "threw his refunded money on the ground," DE 31, Mot. for Summ. J., Page ID 205, 208, the district court did not address the littering argument and the defendants do not press it on appeal.

No. 20-3599                          *Wood v. Eubanks, et al.*                          Page 8

or provoke the average person to an immediate retaliatory breach of the peace." *State v. Hoffman*, 387 N.E.2d 239, 242 (Ohio 1979). In other words, the statute "require[s] that the speech in question constitute 'fighting words.'" *D.D. v. Scheeler*, 645 F. App'x 418, 425 (6th Cir. 2016) (citing *City of Cincinnati v. Karlan*, 314 N.E.2d 162, 164 (Ohio 1974)). Fighting words—as defined by the Supreme Court in *Chaplinsky v. New Hampshire*—are words that "by their very utterance inflict injury or tend to incite an immediate breach of the peace." 315 U.S. 568, 572 (1942). So Wood "could only act with the required mental state for this crime—recklessness—if 'with heedless indifference to the consequences,' []he engaged in conduct or speech likely 'to inflict injury or provoke the average person to an immediate retaliatory breach of the peace.'" *Osberry*, 750 F. App'x at 394 (quoting *Goodwin*, 781 F.3d at 333). "The question is whether, under the circumstances, it is probable that a reasonable police officer would find [the] language and conduct annoying or alarming and would be provoked to want to respond violently." *Goodwin v. City of Painesville*, 781 F.3d 314, 333 (6th Cir. 2015) (quoting *Warren v. Patrone*, 600 N.E.2d 344, 345 (Ohio Ct. App. 1991)).

We have explained that, since the *Chaplinsky* decision, its "'fighting words' doctrine has become 'very limited.'" *Greene v. Barber*, 310 F.3d 889, 896 (6th Cir. 2002) (quoting *Sandul v. Larion*, 119 F.3d 1250, 1255 (6th Cir. 1997)). While calling a city marshal "a God damned racketeer" and "a damned Fascist" constituted fighting words in *Chaplinsky*, "[s]tandards of decorum have changed dramatically since 1942, . . . and indelicacy no longer places speech beyond the protection of the First Amendment." *Id*. at 895–96 (citation omitted). "The fighting words exception is very limited because it is inconsistent with the general principle of free speech recognized in our First Amendment jurisprudence." *Baskin v. Smith*, 50 F. App'x 731, 736 (6th Cir. 2002). Therefore, "profanity alone is insufficient to establish criminal behavior." *Wilson v. Martin*, 549 F. App'x 309, 311 (6th Cir. 2013); *see also D.D.*, 645 F. App'x at 425 ("Ohio's disorderly conduct statute and the First Amendment require more than the uttering, or even shouting, of distasteful words."); *United States v. Gustafson*, 30 F.3d 134 (Table), 1994 WL 276883, at *3 (6th Cir. 1994) ("The [Ohio] cases are clear that use of profanity alone or generalized derogatory statements are insufficient to support a conviction for disorderly conduct.").

Further, both the Supreme Court and this court have made clear that "police officers . . . 'are expected to exercise greater restraint in their response than the average citizen.'" *Barnes v. Wright*, 449 F.3d 709, 718 (6th Cir. 2006) (quoting *Greene*, 310 F.3d at 896). "Police officers are held to a higher standard than average citizens, because the First Amendment requires that they 'tolerate coarse criticism.'" *D.D.*, 645 F. App'x at 425 (quoting *Kennedy*, 635 F.3d at 216); *see also City of Houston v. Hill*, 482 U.S. 451, 462–63 (1987) ("The freedom of individuals verbally to oppose or to challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state.").

Against that backdrop, the defendants argue that they had probable cause to arrest Wood for disorderly conduct because "[h]is language consisted of personally abusive epithets" that "constitute fighting words." CA6 R. 26, Appellees' Br., at 26. Wood referred to all six officers as, variously, "thugs with badges," "fucking thugs with guns," and "fucking thugs with badges." Yates Cam #1, 2:57–3:10, 3:32–38; Troutman Cam #1, 3:00–31. Wood deployed "motherfuckers" more than once. Yates Cam #1, 3:00, 3:57–4:02; Johnson Cam, 3:35–40; Troutman Cam #1, 3:40–47, 4:03–08. Other insults included "six bitch ass fucking pigs," "fuck all you," "dirty rat bastards," and "eight pussies with badges." Yates Cam #1, 3:00, 3:05–14, 3:57–4:02; Troutman Cam #1, 3:00–31, 3:40–47; Johnson Cam, 3:35–40. In addition to his general commentary about the officers, Wood spoke to four people specifically. To Blair, Wood said, "Who the fuck do you think you are," called Blair a "fucking flyboy," and asked whether Blair knew what "the legal definition of battery is motherfucker." Troutman Cam #1, 1:10–1:15; 3:13–24; 4:03–08. Wood at one point called Steiger, "a fucking thief." Yates Cam #1, 3:13–17; Johnson Cam 2:53–56. Wood also said to one of the officers, "Then that's your fucking fat-ass problems, motherfucker." Yates Cam #1, at 3:57–4:02. And shortly before Wood was arrested, he turned to Troutman and said, "You're one big man ain't you, motherfucker." Troutman Cam #1, 3:40–47.

We have routinely protected the use of profanity when unaccompanied by other conduct that could be construed as disorderly. *See Sandul*, 119 F.3d at 1255 ("[T]he use of the 'f-word' in and of itself is not criminal conduct."). In *Greene v. Barber*, we explained that whether the plaintiff had "a constitutionally protected right" to call police officer Lt. Barber "an 'asshole' and

castigate him as 'stupid' . . . depend[ed] on the time, place, and manner in which Mr. Greene [the plaintiff] so expressed himself." 310 F.3d at 895. While "[i]t [wa]s clear that the Constitution gave Mr. Greene no license to interrupt the transaction of public business by loud animadversions on Lt. Barber's personality and mental capacity," we held that "standing alone, the fact that Mr. Greene's remarks were unflattering to Lt. Barber clearly gave Barber no license to abridge Greene's freedom to speak as he did." *Id*. We held that "Mr. Greene's characterization of Lt. Barber as an 'asshole' was not egregious enough to trigger application of the 'fighting words' doctrine" because "it is hard to imagine Mr. Greene's words inciting a breach of the peace by a police officer whose sworn duty it was to uphold the law." *Id*. at 896. Likewise, we held in *D.D. v. Scheeler* that saying "fuck the police" and referring to officers as "useless" and "idiots" "did not rise to the level of 'fighting words'" in part because the epithets were "no worse than the speech protected" in a previous case, were not "beyond 'coarse criticism,'" and were not "designed to provoke" the officer. 645 F. App'x at 420, 425–27. We have held that similar speech is protected by the First Amendment when unaccompanied by other conduct,[2] which is consistent with the rule that "[f]its of rudeness or lack of gratitude may violate the Golden Rule" but are not "illegal," "punishable[,] or for that matter grounds for a seizure." *Cruise-Gulyas v. Minard*, 918 F.3d 494, 495 (6th Cir. 2019) (extending middle finger to police officer provided no legal basis to stop plaintiff).

    We have been equally clear that behavior involving more than mere epithets provides probable cause for a disorderly conduct arrest. In *Harris v. United States*, a man approached a Drug Enforcement Agency agent in an airport and said, "I don't appreciate you and your

---

[2]*See Cruise-Gulyas*, 918 F.3d at 496; *Hagedorn v. Cattani*, 715 F. App'x 499, 506 (6th Cir. 2017) (calling officer "asshole" and "idiot" were not fighting words); *Wilson*, 549 F. App'x at 311 (officers "patently without probable cause to arrest" an "11 year-old girl [who] raised her middle fingers toward an adult male police officer" because "[t]hose circumstances did not create a situation where violence was a likely result"); *Kennedy*, 635 F.3d at 211, 218 n.5 (calling officer a "son of a bitch" and a "fat slob" "seems to be the type [of speech] that the First Amendment protects" because "[e]ven crass language used to insult police officers does not fall within the 'very limited' unprotected category of 'fighting words'" (quoting *Greene*, 310 F.3d at 892–93, 896)); *Zulock v. Shures*, 441 F. App'x 294, 305–07 (6th Cir. 2010) (no probable cause to arrest man for disorderly conduct under Ohio law where man said "'fuck you' four or five times" to police officer while holding knife); *Leonard v. Robinson*, 477 F.3d 347, 351, 359 (6th Cir. 2007) (telling elected officials "that's why you're in a God damn lawsuit" "was not, as a matter of law 'likely to cause a fight'" (citation omitted)); *Barnes*, 449 F.3d at 718 ("using [foul] language, cussin', ranting and raving about [a] prior [dispute]" to police officer does not constitute fighting words because even such strong language "is accorded the full protection of the First Amendment"); *Sandul*, 119 F.3d at 1252, 1256 (shouting "fuck you" and extending middle finger to abortion protesters was protected by First Amendment).

monkeys following me and if you keep it up I'll rip your head off."  422 F.3d 322, 325 (6th Cir. 2005).  Another officer who overheard the comment approached the man and he pushed her. Speech aside, "by threatening the officers with physical violence and by making threatening gestures," the man "provided [the officers] with the necessary probable cause to charge him with disorderly conduct."  *Id.* at 330; *see also Gustafson*, 30 F.3d 134, at \*3 (sufficient evidence to support judgment that defendant was guilty of disorderly conduct where he "waved his finger approximately one inch from the faces of [the officers] after being warned to stop"); *Hagedorn v. Cattani*, 715 F. App'x 499, 506 (6th Cir. 2017) (probable cause to arrest a woman because her tirade was "inappropriately loud" and disturbed neighbors, but not because she employed profanities).  Similarly, we have repeatedly held that the state can punish an "individual whose act of speaking, by virtue of its time and manner, plainly obstructed ongoing police activity involving a third party."  *King v. Ambs*, 519 F.3d 607, 614 (6th Cir. 2008); *see also Schliewe v. Toro*, 138 F. App'x 715, 721–23 (6th Cir. 2005) ("[I]n this case it is abundantly clear that Mr. Schliewe was arrested for bleeding on those around him and threatening Officer Toro, regardless of the fact that he used profanity.").

While Wood's speech was profane, the circumstances did not create a situation where violence was likely to result.  None of the officers reacted with violence or appeared to view Wood's words as "an invitation to exchange fisticuffs."  *Texas v. Johnson*, 491 U.S. 397, 409 (1989); *see also Cohen v. California*, 403 U.S. 15, 20 (1971) (speech not fighting words where there was "no showing that anyone who saw Cohen was in fact violently aroused or that appellant intended such a result"); *Bible Believers v. Wayne Cnty.*, 805 F.3d 228, 246 (6th Cir. 2015) (en banc) (concluding that derogatory speech about Islam did not qualify as fighting words, in part, because "the average individual attending the Festival did not react with violence, and of the group made up of mostly adolescents, only a certain percentage engaged in bottle throwing when they heard the proselytizing").  "And if violence had resulted, the officers would be facing more claims than they are now."  *Wilson*, 549 F. App'x at 311.

We therefore conclude that the First Amendment protected Wood's speech and thus his disorderly conduct arrest lacked probable cause.  This conclusion is consistent with those of other circuits to have considered similar issues.  *See Payne v. Pauley*, 337 F.3d 767, 776 (7th Cir.

No. 20-3599                            *Wood v. Eubanks, et al.*                            Page 12

2003) ("[T]he First Amendment protects even profanity-laden speech directed at police officers. Police officers reasonably may be expected to exercise a higher degree of restraint than the average citizen and should be less likely to be provoked into misbehavior by such speech." (citing *City of Houston*, 482 U.S. at 461)); *United States v. Poocha*, 259 F.3d 1077, 1082 (9th Cir. 2001) (holding that yelling "fuck you" at an officer was not likely to provoke a violent response and "[c]riticism of the police, profane or otherwise, is not a crime"); *Buffkins v. City of Omaha*, 922 F.2d 465, 472 (8th Cir. 1990) (plaintiff's "use of the word 'asshole' could not reasonably have prompted a violent response from the arresting officers").

Relying on Ohio state court decisions applying *Chaplinsky*, defendants contend (and the district court agreed) that swearing at a police officer, alone, constitutes disorderly conduct.  *See, e.g.*, *State v. Wood*, 679 N.E.2d 735, 740 (Ohio 1996) (telling a police officer "'fuck you,' either verbally or via an extended digit," could "constitute fighting words").  Although Ohio's state law appears discordant with our own, *see, e.g.*, *Sandul*, 119 F.3d at 1255–56; *Wilson*, 549 F. App'x at 310; *Cruise-Gulyas v. Minard*, 918 F.3d 494, 496 (6th Cir. 2019), *cert. denied*, 140 S. Ct. 116 (2019), our caselaw requires that—for the purposes of examining a claim of qualified immunity from a § 1983 cause of action—we turn only to federal court precedent for evaluating whether police officers have probable cause to effectuate an arrest, *see Kennedy*, 635 F.3d at 215 ("[S]tate law defines the offense for which an officer may arrest a person, while federal law dictates whether probable cause existed for an arrest."); *Sandul*, 119 F.3d at 1256 (holding that "protected speech cannot serve as the [sole] basis for a violation" of any statute).

The defendants also argue that "Wood committed disorderly conduct while continually yelling and cursing at Dean Blair, a civilian."  CA6 R. 26, Appellees' Br., at 37.  The defendants cite a portion of the exchange where Wood appeared to question Blair's military service, but the defendants do not argue that questioning a person's military credentials amounts to fighting words.[3]  Rather, they focus on Wood's use of curse words, his proximity to Blair, and his "hostile and agitated" demeanor.  *Id*. at 38.

---

[3]Nor could they raise this argument now because they did not press it in the district court.

No. 20-3599                          *Wood v. Eubanks, et al.*                          Page 13

As an initial matter, although the defendants refer to Blair as a civilian, they do not challenge the district court's determination that "Blair is a quasi-state official, acting as the Executive Director of the Clark County Fairgrounds." *Wood*, 459 F. Supp. 3d at 977 n.3.  As for the profanity, Wood called Blair a "fucking flyboy" and, like the officers, a "motherfucker." Troutman Cam #1, 3:13–24; 4:03–08.  These words alone do not provide probable cause to arrest Wood for disorderly conduct.  As for Wood's proximity to Blair, it was Blair who followed Wood, matching his pace as Wood headed toward the fairgrounds exit.  And when Wood asked Blair whether he knew "what the legal definition of battery is, motherfucker," Blair was walking ahead of Wood, with Troutman between them, and they were discussing whether Troutman had touched Wood.  Troutman Cam #1, 4:03–08.  Wood did not step closer to Blair or make any gesture that could be construed as threatening.  Neither proximity nor Wood's demeanor provided probable cause for arrest.

Regarding the claim that the officers had probable cause to arrest Wood for "yelling" and "screaming" at Blair, the defendants provide no further argument or any case citations as to how that constituted disorderly conduct.  Forfeiture aside, *see United States v. Johnson*, 440 F.3d 832, 846 (6th Cir. 2006), the claim is meritless.  Even assuming, as the defendants argue, that the "level of noise [Wood] was making could itself violate Section (A)(2)," under the statute's clear language, "a disorderly conduct charge against h[im] can stand only if []he 'recklessly caused inconvenience, annoyance, or alarm' by 'unreasonably' making the noise." *Goodwin*, 781 F.3d at 333–34 (quoting Ohio Rev. Code Ann. § 2917.11(A)(2)).

From Wood's telling, Blair ordered him removed from the fairgrounds based on his "Fuck the Police" shirt.  Blair followed Wood to the exit and continued to argue with him.  Blair then offered to serve as Troutman's "witness" if Wood pursued battery charges against Troutman.  While Wood may have spoken at an elevated volume, nothing in this record indicates that anyone complained.  *Cf. Hagedorn*, 715 F. App'x at 506 (finding sufficient basis for arrest where officer "provided evidence" of neighbor's complaint "which would allow a reasonable person to believe that [the plaintiff] was guilty of making unreasonable noise . . . despite the protected nature of her speech").  Given these facts, Wood's conduct was not "sufficiently

No. 20-3599                          *Wood v. Eubanks, et al.*                          Page 14

reckless and unreasonable to allow an officer to reasonably believe there was probable cause to arrest h[im]." *Goodwin*, 781 F.3d at 334.

The case presenting the most similar facts to this one is *Henry v. City of Flint*, 814 F. App'x 973 (6th Cir. 2020). There, a man and officer engaged in a heated argument stemming from the officer's investigation of a neighboring abandoned house. The man called the officer a number of profane names, including "asshole," "smart butt," "dumbass," "motherfucker," "punk motherfucker," and "bitch," in addition to telling the officer to "get the fuck on," "fuck you," and to "do your damn job." *Id.* at 975–77. The case involved a factual dispute as to whether the neighbor turned on a light during the kerfuffle because "[a]bsent the light being turned on as a possible sign of disturbance to others, there was no ground for believing there was a basis for arresting [the plaintiff]—other than his profanity and verbal abuse of the officers, which we have clearly held is not, standing alone, a basis for an arrest." *Id.* at 981 (citing *Greene*, 310 F.3d at 896–97; *Kennedy*, 635 F.3d at 215–16). We denied summary judgment to the officer because absent the light, "a reasonable jury could find that no reasonable officer could have thought there was such a disturbance, rather than simply a belligerent, profane, and uncooperative person." *Id.* at 982. In the absence of any evidence that Wood was unreasonably loud, there was no probable cause to arrest Wood for his profanities alone.

Finally, the defendants argue that there was probable cause to arrest Wood for disorderly conduct because Wood "defied the Deputies' orders" when he insisted on exiting through the back gate rather than the front. CA6 R. 26, Appellees' Br., at 26. But they provide no further argument or any case citations on this point, rendering it forfeited. *See Johnson*, 440 F.3d at 846. And, regardless, refusing to follow police instructions constitutes obstructing official business, Ohio Rev. Code Ann. § 2921.3, which the defendants did not pursue either in the district court or on appeal.

For these reasons, the officers lacked probable cause when they arrested Wood.

No. 20-3599                    *Wood v. Eubanks, et al.*                    Page 15

B.

The officers are not entitled to qualified immunity if the constitutional right they violated "was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Wood's right to be free from arrest under these circumstances was clearly established at the time.

In *Henry v. City of Flint*, we denied qualified immunity because "there was no ground for believing there was a basis for arresting [the plaintiff]—other than his profanity and verbal abuse of the officers, which we have clearly held is not, standing alone, a basis for an arrest." 814 F. App'x at 981. *Henry* was decided in 2020, so the defendants contend it cannot clearly establish Wood's right to be free from arrest in 2016. But *Henry* did not represent a change in the law. *Henry* relied on our decisions in *Greene v. Barber* and *Kennedy v. City of Villa Hills*, which we decided in 2002 and 2011, respectively. *Id.* at 982. In *Greene*, we held that the plaintiff's "right not to be arrested for insulting a police officer [was] 'clearly established.'" 310 F.3d at 897. The same goes for *Kennedy*. Although the plaintiff in that case "used coarse language," he "did not pose [a] risk of public alarm" because there were "no third parties . . . whom an arrest would protect" or whom the plaintiff disturbed. 635 F.3d at 217. We said then that "the First Amendment requires . . . police officers [to] tolerate coarse criticism," and "[e]ven crass language used to insult police officers does not fall within the 'very limited' unprotected category of 'fighting words.'" *Id.* at 214, 216, 218 n.5.

Beyond *Greene* and *Kennedy*, we had already made clear by 2016 that profanity alone is insufficient to constitute fighting words under Ohio's disorderly conduct statute. *See D.D.*, 645 F. App'x at 425, 427 (denying qualified immunity to officer on false arrest claim because "Ohio's disorderly conduct statute and the First Amendment require more than the uttering, or even shouting, of distasteful words," and "no competent officer would have found probable cause to arrest [the plaintiff]"); *Leonard*, 477 F.3d at 359 ("The Supreme Court has held that a state may not make a 'single four-letter expletive a criminal offense.'" (quoting *Cohen*, 403 U.S. at 26)); *McCurdy v. Montgomery Cnty.*, 240 F.3d 512, 515, 520 (6th Cir. 2001) (finding that plaintiff's "right to challenge verbally" officer's conduct, including stating "what the fu*k do you want" and "what the fu*k is your job," was "well-established"); *Sandul*, 119 F.3d at 1256

(denying qualified immunity because there should be "little doubt in the mind of a reasonable officer that the mere words and gesture 'f—k you' are constitutionally protected speech"); *City of Houston*, 482 U.S. at 462–63 & n.12 ("The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state," a "conclusion [that] finds a familiar echo in the common law."). Given this backdrop, it was clearly established in 2016 that there was no probable cause to arrest Wood for disorderly conduct.

IV.

Wood also asserts a First Amendment retaliation claim. To prevail, Wood must demonstrate three elements: (1) "that he engaged in constitutionally protected speech," (2) "that he suffered an adverse action likely to chill a person of ordinary firmness from continuing to engage in protected speech," and (3) "that the protected speech was a substantial or motivating factor in the decision to take the adverse action." *Westmoreland v. Sutherland*, 662 F.3d 714, 718 (6th Cir. 2011).[4] The district court granted summary judgment to the defendants after concluding that Wood had not suffered an adverse action and "there [wa]s no evidence of retaliatory animus from Defendants based on Plaintiff's t-shirt." *Wood*, 459 F. Supp. 3d at 978.

As to the first element, the defendants do not contest that Wood's shirt was constitutionally protected speech, nor could they. Wood's "Fuck the Police" shirt was clearly protected speech. "It is well-established that 'absent a more particularized and compelling reason for its actions, a State may not, consistently with the First and Fourteenth Amendments, make the simple public display of a four-letter expletive a criminal offense.'" *Sandul*, 119 F.3d at 1254–55 (alterations omitted) (quoting *Cohen*, 403 U.S. at 26).

On the second element, Wood demonstrated that he suffered an adverse action because the police officers escorted him out of the fairgrounds. Although we have held that a Fourth Amendment seizure amounts to an adverse action, *Cruise-Gulyas*, 918 F.3d at 497, Wood does

---

[4]The Supreme Court recently announced an additional requirement, holding that "a plaintiff must plead and prove the absence of probable cause for the arrest" to sustain a First Amendment retaliation claim. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724–25 (2019). As we have concluded, Wood satisfied this requirement because probable cause did not exist for Wood's arrest.

not challenge the magistrate's determination—which the district court adopted—that he was not seized until the moment of arrest. *See* R. & R., 2020 WL 635652, at *8; *Wood*, 459 F. Supp. 3d at 980. To determine whether removing Wood from the fairgrounds was an adverse action, we consider whether the action "would 'deter a person of ordinary firmness' from the exercise of the right at stake." *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999) (en banc) (citation omitted); *see also Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998) (applying same standard outside of prison context).

We have "emphasize[d] that while certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations, this threshold is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed past summary judgment." *Thaddeus-X*, 175 F.3d at 398. While "[m]ere threats . . . are generally not sufficient to satisfy the adverse action requirement," *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004), acts that are more than a "petty slight[] or minor annoyance[]" suffice, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). *See Benison v. Ross*, 765 F.3d 649, 660 (6th Cir. 2014) (withholding an educational transcript); *Paeth v. Worth Twp.*, 483 F. App'x 956, 963 (6th Cir. 2012) (issuing a stop work order); *Campbell v. Mack*, 777 F. App'x 122, 135 (6th Cir. 2019) (over-tightening a detainee's handcuffs); *see also Rutan v. Republican Party of Illinois*, 497 U.S. 62, 75 n.8 (1990) (noting that the First Amendment "already protects state employees . . . from even an act of retaliation as trivial as failing to hold a birthday party for a public employee . . . when intended to punish her for exercising her free speech rights" (internal quotation marks and citation omitted)). Here, police officers removed Wood from a public event under armed escort. That act was neither "'inconsequential' as a matter of law," *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 585 (6th Cir. 2012), nor just a "petty slight[] or minor annoyance[]," *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68. Wood satisfies the adverse action element.

Finally, the facts are in dispute as to whether Wood's shirt "was a substantial or motivating factor in the decision to take the adverse action." *Westmoreland*, 662 F.3d at 718. While the defendants argue that they removed Wood from the fairgrounds because he was filming people, Wood alleges that Blair walked up to him flanked by the defendants and yelled

No. 20-3599                          *Wood v. Eubanks, et al.*                          Page 18

"Where's this shirt? I want to see this shirt." DE 55-2, Wood Dep., Page ID 468. As the officers surrounded Wood and escorted him from the building, one of them said to Wood, "You've been given an order to vacate the property. So you're leaving." Troutman Cam #1, 00:32–35. While walking Wood through the fairgrounds, with Wood repeatedly questioning whether the defendants had taken an oath to uphold the Constitution, one of the officers said they were "escorting . . . [Wood] to the front gate." Johnson Cam 2:29–35. And while en route to jail, one officer said to Wood, "How's that work? You got a shirt that said, 'f the police,' but you want us to uphold the Constitution?" Troutman Cam #2, 17:15–21. A reasonable jury, considering these facts, could conclude the officers were motivated to surround Wood and require him to leave in part because he wore a shirt that said "Fuck the Police." We reverse the grant of summary judgment to the defendants on this claim.

V.

Wood used strong language to criticize the defendants. But "[o]ne of the prerogatives of American citizenship is the right to criticize public men and measures—and that means not only informed and responsible criticism but the freedom to speak foolishly and without moderation." *Cohen*, 403 U.S. at 26 (quoting *Baumgartner v. United States*, 322 U.S. 665, 673–74 (1944)). "[T]he First Amendment recognizes, wisely we think, that a certain amount of expressive disorder not only is inevitable in a society committed to individual freedom, but must itself be protected if that freedom would survive." *City of Houston*, 482 U.S. at 472. Wood's speech, while coarse, was constitutionally protected. We reverse the grant of summary judgment and remand the case for further proceedings consistent with this opinion.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 20-3599

MICHAEL ANDREW WOOD,

     Plaintiff - Appellant,

v.

CHAD EUBANKS, in his individual and official capacity as
Sergeant of the Clark County Sheriff's Department; MARIO
TROUTMAN, JR., CHERISH STEIGER, MATTHEW
YATES, JACOB SHAW, and JOSEPH JOHNSON, in their
individual and official capacities as Deputies of the Clark
County Sheriff's Office,

     Defendants - Appellees.

```
┌─────────────────────────────┐
│          FILED              │
│       Feb 08, 2022          │
│   DEBORAH S. HUNT, Clerk    │
└─────────────────────────────┘
```

Before:  GUY, GIBBONS, and GRIFFIN, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Southern District of Ohio at Dayton.

     THIS CAUSE was heard on the record from the district court and was argued by counsel.

     IN CONSIDERATION THEREOF, it is ORDERED that the district court's grant of summary judgment to defendants is REVERSED and REMANDED for further proceedings consistent with the opinion of this court.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk